May it please the court, my name is Bob Kovacevich. I'm admit of this court. On my left is Aaron Lowe who is also admitted. He will not argue. I'd reserve five minutes if I may. I'll help you keep an eye on the clock. Thank you, Your Honor. Your Honor, there's a big discrepancy as to what the record is in this case, at least reading the state's brief. They talk about there were taxable sales and that the Matheson is taxable, a taxable person. I submit to Your Honors that it's obvious that the record in this case is a complaint, and the plausible facts in the complaint indicate and clearly allege one error, or one is the excerpts 179, one is 172, that my client never wholesale to anyone except, and there's even a question of whether she wholesale. She merely transported to her Indian brother, full brother, Nick Matheson, who had a convenience store, smoke shop, if you will, on the Coeur d'Alene Indian Reservation, and also to her father, Paul Matheson, who had a smoke shop on the Puyallup Indian Reservation. Those shops, of course, complied with the Indian tax law by virtue of the compact by the State of Washington with the tribe, the Puyallup tribe, and also obviously the Coeur d'Alene Reservation is in Idaho. So there were no sales. There is absolutely no evidence, and of course I'm talking about the complaint that Matheson, I'm talking about Jesse Matheson, my client, ever sold anything. Well, counsel, I guess what troubles me is the district court determined that the tax injunction act applied to this case because the gist of this case is an attempt on the part of the Department of Revenue to collect taxes, and whatever the merits are, and I guess you're arguing the merits that there were no taxes due and owing here, why doesn't the tax injunction act deprive the district court of the ability to proceed any further on the matter? Leave it to the courts of the State of Washington once it makes the determination that there is a speedy and adequate remedy available to raise the arguments that you're making to us. Your Honor, the direct reason is that there is a $7 million penalty involved in this case. It's a huge penalty to impose on an individual. I don't think there's anybody in the courtroom that would deny that fact, but it is a tax penalty that is being sought, and what's your response to my question? I completely disagree, Your Honor, because it is a penalty for failure to follow the cigarette tax law. It is not a tax penalty, if I may. The tax penalty was assessed... The state courts of Washington think it is, did they not? I mean, I looked at the state judges' determinations, and there's no question in those opinions that this is a tax that's at the heart of this matter. Your Honor, we have filed in the excerpts, and at this point I don't have it at my fingertips, the judgment in this case. It wants $1,000,000 for in tax, $71,000 in tax penalty, and a $7 million penalty under RCW 82 of 24550 for not following... Counsel, I'm still waiting for an answer to my question. If you admit that there's a $1,000,000 tax before we get to the question of the $7 million, why doesn't the TIA deprive the federal district court of jurisdiction to proceed further? Your Honor, I've cited the Sebelius case in my brief, and it says if there is a penalty, the TIA does not apply. And the government argues that there's a difference between Section 1341 and 7222. That isn't correct. Enochs v. Williams... Your Honor, two things. This is a civil rights case for aggressively harassing my client and for not allowing a seminar or a hearing on whether or not her wholesale license should be revoked. And haven't the state courts addressed that issue and decided it adversely to your client's position? They've basically said, you have this remedy available, and we find that she was a cigarette wholesaler, and she owes the tax. And she's had a hearing before administrative bodies and now courts, the Thurston County Superior Court. I'm still trying to figure out why you're here in federal court. Why are you not... Your Honor, we did request search of her. It was turned down. I believe that's in the record. And so we're here saying we have exhausted our remedies, and the federal constitution has been violated. Why doesn't Rooker-Feldman apply? You're trying to do an end run around an issue that's already been determined finally and conclusively against you by the state court. Because we do not have an adequate legal remedy in state court, Your Honor. Well, the only remedy you had, you lost, which was a petition for certiorari to the United States Supreme Court. Your Honor, we did... I'm sorry, I interrupted. We do not have a damage remedy in state court. We're asking for damages in this court. Well, I guess the question is why wouldn't Rooker-Feldman bar you from, in essence, relitigating this case under the guise of a 1983 action? Your Honor... Neither side raised that issue, but I'm... We... Given the current procedural posture of the case with the final judgment on which certiorari has been denied, how can we reopen Pandora's box here? Your Honor, two things. We are not relitigating because Matheson had a wholesale license, which has nothing to do with tax. She had a license to carry cigarettes unstamped, and we're alleging that both the state and federal law was violated by the state agents harassing her, having three people visit, having her file state income tax B&O reports when she was exempt, and they harassed her into losing the license. We think, and I have not, and perhaps we should have in the briefs, cited Rooker-Feldman, but that's an exception to Rooker-Feldman as I understand it. We have several reasons that our constitutional rights, both state and federal, were violated. We also allege in this case that the agents acted far beyond their authority. We've asked for individual and personal liability. I believe that's an exception to Rooker-Feldman. I apologize for not having briefed that. So we're asking for different relief in this court, Your Honor, and for unconstitutional treatment during both a tax audit. Why wouldn't she be collaterally estopped to relitigate the issue of whether or not she was a cigarette wholesaler? She might be, Your Honor. That owed a penalty, which has now been a tax that's now been determined against her. I don't know that answer, but I can tell the court she may be, but we're entitled to our day in court to have that adjudicated. Well, I guess. I thought you already had it. Not on damages and violation of constitutional rights by audit and by depriving her of a license. But the question that we're wrestling with here is that issue has been determined against her in a final determination through the There's no question in the light of that ruling that she was a wholesaler obligated to declare and file these reports and now pay the penalty, the tax penalty, or not doing it. So how could you establish a constitutional violation by revenue agents in pursuing to collect the tax and penalties that have been determined to be due and owing? We think, Your Honor, we have established it because the federal cases, Moe and McClanahan, I've cited in the brief of the United States Supreme Court, state that Indian people are federally preempted by the Constitution, Article I, Section 8, Clause 3, that the Congress has control of enrolled Indians. We allege, of course, in the complaint that Matheson is and always has been an Indian person living on her reservation, and that's federal preemption. The lower courts did not consider federal preemption. We also allege a violation of interstate commerce. I thought the cases you were relying on were drawing the distinction between the right of the tribe in order to bring this kind of a challenge versus the right of an individual Indian. And doesn't Ninth Circuit case law say an individual Indian does not have that right? The prior Kaminak cases said that, Your Honor. We are talking about exempt or the two, both the Idaho tribe, Coeur d'Alene tribe, and the Puyallup tribe no longer have to, any sales on those two reservations are exempt. And we contend Kaminak's different is no longer the law because there is no obligation to pay the state cigarette tax on either spot. Okay. I think we understand that. You wanted to reserve five minutes. You're down to four minutes and 20 seconds. Thank you. Save that. Okay. Let's hear from the state. May it please the Court. My name is Rebecca Glasgow, and along with Mr. Hankins, I represent the state and the other defendants below. You may want to lower that. Yeah. There's a button. There's a button down there that will lower it just a bit. Okay. Thank you. You're welcome. We put that in just for counsel. Yeah, just for you. Exactly. Judge Tallman is right that this case presents a straightforward question of law, not fact, on appeal. And the claims that Ms. Mathison brought are the very types of claims that are covered by the Tax Injunction Act and by principles of comedy. And Ms. Mathison had a plain, speedy, and efficient remedy in state court with an opportunity for U.S. Supreme Court review, which they denied. Suppose the – and this is a hypothetical question – suppose the auditors had beat her up, physically assaulted her during the course, or threatened her, extorted statements from her in the course of the audit. Would that be actionable? Not in federal court. And the reason for that is because the United States Supreme Court has held that Section 1983 actions are covered by the tax – or are covered by principles of comedy. And this court has extended that reasoning to the Tax Injunction Act, too. So a claim of that type would have to be brought in Washington state court. Washington state court, yes. And, in fact, this court held something very similar in the Komenaut case, where there were allegations of false arrest and assault. And so even then, this court held that those cases need to be brought in state court, where they involve an issue about the actions of state officials in administering or enforcing the state tax scheme. And so that question has actually already been covered by the Komenaut case. On the question of whether or not the cigarette tax penalty is actually a tax penalty, it does appear in the Cigarette Tax Statute. RCW 8224 is the chapter. And the penalty should also be covered by the Tax Injunction Act because it's an integral part of the state tax enforcement system. Its purpose is to deter tax evasion and to undermine the black market in unstamped cigarettes. And so to say that that penalty somehow falls outside of the scope of the Tax Injunction Act would be contrary to both U.S. Supreme Court and this court's reasoning in other cases. When the proceedings began in state court, what amount of tax penalty did Washington authorities seek? So the assessment has a little bit more than $1.4 million in tax and $7,034,000 in penalty. There is interest accruing on that. Now, remember that the – I didn't make my question clear. I'm sorry. When the proceedings first started, what amount of penalty did state authorities seek? The proceedings started at the Board of Tax Appeals after a tax assessment by the Department of Revenue. And that assessment included the state tax – the state cigarette tax penalty, which is a $10 per pack penalty. Let me ask the question another way. Yeah, I'm sorry. I'm not grasping your question. Well, it may not be clear. Was there any difference at any point along the line between the amount of penalty that Washington authorities sought and the amount that was awarded? No. Other than interest? No. There's never been a state administrative or state court decision that has taken issue with the amount of that penalty. So whatever amount the regulators sought, the process all the way through the end said, that's fine? Yes. And when the case worked its way up to the state court of appeals, the court of appeals commissioner issued a decision specifically upholding the penalty in the face of constitutional challenges that Ms. Matheson was bringing to that penalty. So, yes, the court of appeals upheld the penalty. The state Supreme Court denied review, and the U.S. Supreme Court denied certiorari. The context of the Tax Injunction Act says that you have to proceed under state law where a plain, speedy, and efficient remedy may be had in the courts of such state. That's U.S.C. 1341. That's correct. And there's no flexibility in there for fairness or overreaching or? No. And, in fact, this court has held in the air Polynesia and the wood cases that even where the taxpayer comes forward and says that they certainly cannot afford to pay the tax, but the state court says that you can only challenge the tax after you've paid it. So there's a state prepayment requirement. Even in those circumstances, the Ninth Circuit has applied the Tax Injunction Act and held that there is no separate avenue to the federal courts because there's still an opportunity for plain, speedy, and efficient remedy in federal courts. Even if we were to conclude that the state procedures are essentially a rubber stamp? Well, you do have some discretion to evaluate the state court proceedings, but when this court has done so, it's been very clear that it takes a narrow view of what would overcome that plain, speedy, and efficient remedy. And the example is where, for practical purposes, the taxpayer can't get into court because there's a state court because there's a prepayment requirement, and even in those circumstances. But here the courts actually proceeded to hear the claims without requiring the taxpayer to front the money. You're correct. In Washington, the taxpayer has three options when they get a tax assessment. They can either go straight to Superior Court under RCW 8232180, though that does have a prepayment requirement. They can go straight to Superior Court on constitutional claims under RCW 8232150, and that's the provision under which the Court of Appeals Commissioner proceeded to evaluate the constitutional arguments. The third option is to do what Ms. Mathison did here and go to the Board of Tax Appeals without any prepayment requirement. She had a full and fair hearing. She had the opportunity to bring witnesses, to present documentary evidence, and to cross-examine the department's witnesses. There were credibility determinations in the Board of Tax Appeals' opinion, and then she challenged those in the Superior Court and worked her way up. Now there is a prepayment requirement in RCW 8203180 that would have required her to pay the tax and penalties to challenge that Board of Tax Appeals decision on non-constitutional bases. And so those three options were available to her. And she went to the Thurston County Superior Court on the second option? She went to the Board of Tax Appeals through the Superior Court and then up to the Court of Appeals, the State Supreme Court, and the U.S. Supreme Court. Okay. And the other question I had was, as I understood the record, and perhaps you can clarify this for me, she was asked to account for roughly 700,000 cartons of cigarettes? It was actually a little more than 700,000 packs of cigarettes. Oh, packs of cigarettes. Okay. But she was only able to come up with documentation for about 150,000? She did provide documentation for about that many, but the Board of Tax Appeals ultimately found that explanation not credible because one of the witnesses at the Board of Tax Appeals was the manager of the smoke shop on the Puyallup Reservation where that documentation claimed the cigarettes were sold. And she said, the manager said very clearly, that that smoke shop had never purchased cigarettes from Ms. Matheson. So the state of the record and the findings of the state court that presumably would be race judicata, if we could hear a cognizable 1983 claim, would be that she is completely unable to account for what happened to 700,000 packs of cigarettes. Correct. And that's really what accounts for the volume of the penalty. The legislature has imposed the $10 per pack penalty, which is a reasonable penalty given the purposes. And so it's really that volume that drives the penalty into the multiple million dollars range. And at this point we have no idea to whom she transferred them to. Correct. Okay. So if you have no further questions. Any questions? I think not. Thank you. So this court should affirm the district court's order affirming the case. Or dismissing the case. Dismissing the case. Sorry. All right. Thank you. Counsel, you've got about four and a half minutes left. In answer to Judge Hawkins, the excerpts of 207 gives the assessment clearly and lists all the amounts, the $7 million, the $1.4 million, and the $71,000, which is the tax penalty. And I realize that Judge Shulman, of course, I already answered and so forth. One thing I want to emphasize is that the state procedure never gives a jury trial. The state judges, even the hearing judges and administrative, are not, of course, federally appointed for life. And the entire proceeding is limited to the records. So we did not get a fair hearing. Well, as I understood the state's argument, you brought a challenge to the ruling by the State Board of Tax Appeals in the Thurston County Superior Court on constitutional issues, did you not? Yes, we asked for constitutional, but the ---- because those Section 1983 claims are cognizable in Washington state courts, correct? I don't believe so, Your Honor. The Board of Tax Appeals cannot consider constitutional arguments. The Thurston County Superior Court can, as can Division I of the Court of Appeals, or Division II of the Court of Appeals. Your Honor, we were limited to the record and no jury. Well, but you're making a constitutional claim if you have a Civil Rights Act violation, and the first thing you have to show is a constitutional violation, and that is a question of law, is it not? I don't think so, Your Honor, because we're talking also in the Eighth Amendment, and that's a question of fact, and this Court has Rivaland and Patel that sent a course back to say, look, it looks like they're collecting a non-constitutional tax that's not within the TIA, and we better take another look at it. We'll get into factual determination. Didn't you raise that issue as well in Thurston County before the Superior Court, Judge? No, Your Honor, and I'd like to correct, if I may, with respect. The Court said there was 140,000 accounted for. They were all accounted for. That's not what I heard the State say. Yeah, the State said, we account for all the cigarettes. They were all the two of them. Was there a fact-finding by the Tax Appeals Board that she can't account for any of these packs of cigarettes? Yes, Your Honor. If that record were here, of course, on a federal civil rights case, if that record were reviewed, it would show, and of course I've tried the case, that the Department of Revenue people admitted they didn't even know that the 700,000 packs were unstamped, and they had no proof whatsoever that there was any sale to a taxable person. I thought there was testimony from a cigarette seller, I guess it must be a wholesaler in Spokane, who delivered hundreds of thousands of packs of cigarettes to Ms. Matheson. With respect, Your Honor, they had forms. They did not have a person who had personal knowledge to say they loaded untaxable or even the amount of the cigarettes. So the state offered the sale, in essence, the bills of lading or invoices from the Spokane seller with her name on it? Is that what they had? They had a name, but that person was never called, and they admitted they had no direct proof of anything. But aren't those forms required to be filed with the state? I mean, why wouldn't the forms be admissible as public records? Your Honor, the forms were filed, they were admitted in evidence. They don't require a showing of where they're delivered or whether they were stamped or unstamped. They say Indian, and they do say it in some spot unstamped. But your client's name is shown on the form as the person to whom the cigarettes were transferred, is that right? Now, one more time, that's a form that a wholesaler must file. But doesn't the form indicate to whom the cigarettes were delivered? I don't believe so, Your Honor. I don't have total recall on that, but they were admitted. But there was no proof whatsoever. Your Honor, I tried a case here a long time back called Weimerskirch, a federal case where there was no admissible evidence whatsoever that Mr. Weimerskirch was peddling drugs. This court reversed it and said you've got to have admissible evidence. And while that's an analogy, it's not direct, I realize. Well, we do that a lot when we're reviewing district court trial records. But the problem you've got is you've got an administrative agency proceeding, you have forms that are required to be completed by law and filed with the state taxing authorities, and you've got a finding by the board upheld by the Washington courts that these cigarettes were delivered and are unaccounted for by Ms. Matheson. So at this point, you've got nothing to respond other than it ain't so, Judge. It's not true. And you had that opportunity to make that pitch in the state courts. I think I have an opportunity because a wholesaler, let's presume that the reports weren't correct. All that is required if you're a wholesaler, only a wholesaler has to file those forms, is a 30-day suspension of your license. Here, the $9 million was impossible to pay. We filed income tax returns saying we don't owe anything. There was not an assessment on the income tax. It was saying you didn't file your wholesale records right, therefore you owe $9 million. Frankly, I think it's some outrageous conduct that the federal court should hear. I understand. You are out of time, counsel. Thank you for the argument. The case is submitted. We'll get you a decision as soon as we can. Thank you, Your Honor. Thank you very much.
judges: Whyte, Hawkins, Tallman